UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

SOCIETE NATIONALE D'OPERATIONS
PETROLIERES DE LA COTE D'IVOIRE,

                Petitioner,

v.

MRS HOLDINGS LTD,

                Respondent.

Case No. _____

**PETITION TO RECOGNIZE AND ENFORCE FOREIGN ARBITRAL AWARD**

Scott A. Hiaasen, Esq.
Florida Bar No. 103318
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, PH 1
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile:  (305) 858-5261

Yasmine Lahlou, Esq.
**CHAFFETZ LINDSEY LLP**
1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
Fax (212) 257-6950

*Attorneys for Petitioner*
*Société Nationale d'Opérations*
*Pétrolières de la Côte d'Ivoire*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

PARTIES ........................................................................................................................................ 2

JURISDICTION AND VENUE .................................................................................................... 3

FACTUAL BACKGROUND ........................................................................................................ 4

    A.  Background to the Dispute ................................................................................................ 4

    B.  The Arbitration .................................................................................................................. 5

ARGUMENT .................................................................................................................................. 7

    A.  Petitioner Has Satisfied All of the Statutory Conditions for Recognition and Enforcement of the Award ................................................................................................ 8

    B.  None of the Limited Grounds to Refuse Recognition and Enforcement Exist ................... 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ameriprise Bank, FSB v. PNC Bank, Nat'l Ass'n*,
 Civil Action No. 12-1113, 2012 WL 5906400 (W.D. Pa. Nov. 26, 2012) ............................. 9

*Bamberger Rosenheim, Ltd. (Israel) v. OA Dev., Inc. (United States)*,
 862 F.3d 1284 (11th Cir. 2017) ..................................................................................... 7, 9

*Cerner Middle E. Ltd. v. iCapital, LLC*,
 939 F.3d 1016 (9th Cir. 2019) ............................................................................................ 3

*Chelsea Football Club Ltd. v. Mutu*,
 849 F.Supp.2d 1341 (S.D. Fla. 2012) ................................................................................ 7

*Hart Dairy Creamery Corp. v. Kea Invs. Ltd.*,
 No. 20-CV-20452, 2020 WL 6363904 (S.D. Fla. Oct. 29, 2020) ...................................... 3

*Hispasat, S.A. v. Bantel Telecom, LLC*,
 CASE NO. 17-20534-CV-WILLIAMS/TORRES, 2017 WL 8896241 (S.D. Fla. Aug. 2, 2017) ........................................................................................................................ 7, 10

*IMAX Corp. v. Giencourt Investments, S.A.*,
 CASE NO. 17-62033-CIV-COOKE/MCALILEY, 2019 WL 8160700 (S.D. Fla. Sept. 27, 2019) ............................................................................................................................. 9

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*,
 141 F.3d 1434 (11th Cir. 1998) ......................................................................................... 9

*Jankula v. Carnival Corp.*,
 Case No. 18-CV-24670-UNGARO/MCALILEY, 2019 WL 8060595 (S.D. Fla. July 8, 2019) ............................................................................................................................. 7

*Linsen Int'l Ltd. v. Humpuss Sea Transp. PTE LTD*,
 No. 09 CIV. 10393 GBD, 2011 WL 1795813 (S.D.N.Y. Apr. 29, 2011) ........................... 3

**Statutes**

9 U.S.C. § 201 .................................................................................................................. 1, 3, 8, 10

9 U.S.C. § 202 ............................................................................................................................... 8

9 U.S.C. § 203 ............................................................................................................................... 3

9 U.S.C. § 204 ............................................................................................................................... 3

9 U.S.C. § 207 ............................................................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 6 ....................................................................................................................... 9

Petitioner Société Nationale d'Opérations Pétrolières de la Côte d'Ivoire ("Petroci"), by and through its attorneys, alleges as follows in support of its petition (the "Petition") for entry of an order recognizing and enforcing, pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "New York Convention" or the "Convention") and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* (the "FAA"), the Final Award dated March 24, 2021 (the "Award"), as amended by the Addendum to the Final Award dated June 21, 2021 (the "Addendum"), in the arbitration (the "Arbitration") between Petroci and Respondent MRS Holdings Ltd ("MRSH"). The Arbitration was captioned Société Nationale d'Opérations Pétrolières de la Côte d'Ivoire *(Ivory Coast) v. MRS Holdings Ltd (Nigeria), ICC Case No. 23221/DDA* and was conducted in Paris, France, under the Rules of Arbitration of the International Court of Arbitration (the "ICC Court") of the International Chamber of Commerce (the "ICC Rules"). Petroci respectfully seeks an order (1) entering judgment in favor of Petroci and against MRSH; (2) awarding Petroci post-judgment interest at the applicable statutory rate; and (3) awarding Petroci such further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

Petroci brings this proceeding under the FAA and the New York Convention to recognize and enforce the Award against MRSH.

This dispute arises out of Petitioner's and Respondent's joint acquisition in 2009 of some of Chevron's downstream distribution assets in Benin, Cameroun, Congo, Côte d'Ivoire, Nigeria and Togo (the "Chevron Assets"), through a joint venture in which Petitioner and Respondent each owned 50% of the shares. Although the Parties' agreements contemplated that they would jointly manage the Chevron Assets following their acquisition, Respondent and its affiliates gradually

began to lock Petitioner's affiliates out of their management and supervision rights starting in 2011, as well as breaching their duty of loyalty owed to the joint venture and Petitioner. As the Parties remained deadlocked and Petitioner was incurring ongoing losses, it had no choice but to initiate an arbitration against Respondent on November 13, 2017, seeking USD 20 million in damages and an order to reinstate its management and information rights in the Chevrons Assets. For its part, Respondent asserted its own claim of USD 80.9 million. After numerous written submissions and an evidentiary hearing, a three-member arbitral tribunal (the "Tribunal") issued the Award, as subsequently modified by the Addendum, in which it: (i) ordered Respondent to take the necessary steps to reinstate Petitioner's affiliates' management and information rights in the joint venture entities; and (ii) upheld both sides' monetary claims and counterclaims in part, resulting in a net award in Petitioner's favor of USD 11,082,862.50, plus interest. Even after a court in France, where the arbitration was seated, rejected Respondent's challenge against, and confirmed the Award, and a lower court in Nigeria, where Respondent is based, likewise recognized the Award, Respondent still has not paid one cent of what it owes Petitioner. As a result, Petitioner has been forced to file this Petition to obtain a judgment recognizing and enforcing the Award.

## PARTIES

1. Petitioner Société Nationale d'Opérations Pétrolières de la Côte d'Ivoire or Petroci is a state-owned company incorporated under the laws of the Ivory Coast, with its headquarters located at Immeuble les Heveas, 14, boulevard Carde, Plateau, BPV 194 Abidjan, Ivory Coast.

2. Respondent MRS Holdings Ltd or MRSH is a company incorporated under the laws of Nigeria, with its headquarters located at 2 Tin Can Island Port Road, Apapa, Lagos, Nigeria.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this proceeding pursuant to 9 U.S.C. §§ 201 and 203, which provide that United States District Courts shall have original subject matter jurisdiction over a proceeding governed by the New York Convention. The United States, France and Nigeria (as well as the Ivory Coast) are signatories to the Convention.

4. Respondent owns a 2% stake in Hydro Alternative Energy Inc., a Florida corporation with its principal place of business located at 1500 Gateway Boulevard, Suite 220, Boynton Beach, FL 33426. Munoz Decl. ¶¶ 6, 13 & *id*. Ex. G.[1] Accordingly, the Court has *quasi in rem* jurisdiction in this proceeding without regard to Respondent's other contacts with the State of Florida. *See Hart Dairy Creamery Corp. v. Kea Invs. Ltd.,* No. 20-CV-20452, 2020 WL 6363904, at *4 (S.D. Fla. Oct. 29, 2020), *aff'd sub nom. Hart Agric. Corp. v. Kea Invs. Ltd.,* No. 20-14440, 2023 WL 155208 (11th Cir. Jan. 11, 2023) ("The fact that a defendant has [an] interest in property located within the State is what allows a court to properly exercise *in rem* jurisdiction."); *Cerner Middle E. Ltd. v. iCapital, LLC,* 939 F.3d 1016, 1019 (9th Cir. 2019) (*"Quasi in rem* jurisdiction exists when a plaintiff seeks to enforce a judgment against a defendant's in-state property").

5. Venue is proper pursuant to 9 U.S.C. § 204. *See, e.g., Linsen Int'l Ltd. v. Humpuss Sea Transp. PTE LTD,* No. 09 CIV. 10393 GBD, 2011 WL 1795813, at *2 (S.D.N.Y. Apr. 29, 2011) (in a proceeding to confirm a foreign arbitral award under the New York Convention, "[s]ection 203 of the Federal Arbitration Act confers subject matter jurisdiction on this Court,"

---

[1] Citations to "Munoz Decl." refer to the March 25, 2024, Declaration of Alexandra Munoz in Support of Petroci's Petition to Recognize and Enforce Foreign Arbitral Award, attached to this Petition as Exhibit 1.

3

and, "under the Convention, in the absence of an agreement to the contrary, venue is proper in any court that has subject matter jurisdiction") (citations omitted).

## FACTUAL BACKGROUND

### A. Background to the Dispute

6. In 2008, and in order to jointly acquire the Chevron Assets, Petitioner and Respondent set up a corporate vehicle called Corlay Global, which between March and August 2009 acquired from Chevron the following entities: Chevron Nigeria Holdings, Chevron Bénin, Texaco Cameroun, Chevron Côte d'Ivoire and Chevron Togo. Munoz Decl. Ex. A ("Award") ¶¶ 315-318. On or around April 17, 2008, they signed a Consortium Agreement to regulate their rights and obligations as joint venture partners upon assuming ownership of the Chevron Assets. The total purchase price of USD570,471,903 was financed by a loan guaranteed by Petitioner, Respondent and Respondent's affiliates as well as Mr. Alhaji Sayuu Daantata, Respondent's founder and Chief Executive at the time. That loan was the subject of various restructurings. Award ¶¶ 334-337.

7. Following the acquisition, and pursuant to the terms of the Consortium Agreement, the parties proceeded to change the companies' names, as well as their management and the composition of their boards, to reflect the companies' new ownership, and to give each party representation and governance rights in each of the Chevron Assets. Award ¶ 339.

8. Starting in 2010, a political crisis erupted in the Ivory Coast, which resulted in a civil war starting in 2011. This, in turn, disrupted Petitioner's operations. Starting in 2011, Respondent and some of its affiliates took advantage of that situation and engaged in a series of action that continue to date in breach of the Consortium Agreement, whereby (i) they deprived Petitioner of its rights to (a) be informed of the Joint Venture's activities, (b) participate in the

governance of the Joint Venture, and (c) share in the benefits of the Joint Venture; and (ii) breached their duty of loyalty and cooperation.

### B. The Arbitration

9. The arbitration agreement found in Article 17 of the Consortium Agreement (the "**Arbitration Agreement**") provides:

> 17. ARBITRATION
> In case of any dispute between or among the Parties with regard to their rights and duties under this agreement or to any element arising from the Consortium's activities, the dispute will be settled as well as the element set by the Paris Arbitration Court, acting as arbitrator, and the decision will be irrevocable with regard to the content and interpretation of the element as well as the appropriate method of enforcement.

Munoz Decl. Ex. C (Arbitration Agreement).

10. On November 13, 2017, Petitioner initiated an ICC arbitration in Paris under the ICC Rules against Respondent for breach of the Consortium Agreement and asked for an award of damages as well as an order compelling Respondent to restore its management and governance rights in the Chevron Assets. Award ¶ 11.

11. On November 14, 2017, Respondent initiated a separate arbitration in Paris under the ICC Rules seeking an award of damages against Petitioner on the ground that Petitioner had breached an alleged 2008 oral agreement when it failed to make certain payments owed in connection with the repayment of certain loans subscribed for the acquisition of the Chevron Assets. Award ¶ 13. On January 18, 2018, the ICC Court decided to consolidate the two arbitrations, as a result of which Respondent's claims in the second arbitration became counterclaims. Award ¶ 45.

12. On February 12, 2019, the Arbitral Tribunal issued a partial award on jurisdiction, whereby it decided that the Arbitration Agreement in the Consortium Agreement was valid and upheld its jurisdiction to hear Petitioner's claims and Respondent's counterclaims. Award ¶ 9.

13. After several rounds of briefing, a five-day evidentiary hearing conducted remotely between September 28 and October 2, 2020, and post-hearing briefing, the Arbitral Tribunal issued the Award dated March 24, 2021, and the Addendum dated June 21, 2021, in which it recognized that Petitioner and Respondent each owned 50% of Corlay Global and whereby it ordered (i) Respondent to take certain measures to restore Petitioner's representatives on the boards of directors of the Chevron Assets; (ii) Respondent to pay Petitioner damages of USD25,496,650 plus interest at the rate of 10% per annum starting on December 31, 2018; and (iii) Petitioner to pay Respondent USD34,029,629 plus interest at the rate of 10% per annum starting on November 14, 2017. Award ¶ 884. Each side was ordered to bear its own legal costs and attorneys' fees. Award ¶ 884 (f). After Petitioner submitted a request for correction under Article 36 of the ICC Rules, the Arbitral Tribunal issued the Addendum, wherein it acknowledged that it had made a computation error in the calculation of the damages owed to Respondent, which resulted in a reduction of the principal amount owing to Respondent from USD34,029,629 to USD14,413,697.50. Addendum ¶ 46.

14. On July 5, 2021, Respondent filed two actions in France, where the Arbitration was seated, in which it sought to annul the interim award on jurisdiction, the Award and the Addendum. On March 28, 2023, the Paris Court of Appeal issued two rulings, wherein it denied both of Respondent's applications and thereby confirmed and enforced the Award and the Addendum in France. Munoz Decl. Ex. E (Paris Court of Appeal Ruling dated March 28, 2023, in matter RG

6

21-12319) p. 10 and Ex. F (Paris Court of Appeal Ruling dated March 28, 2023, in matter RG 21-12324) p. 8.[2]

15. On April 7, 2022, the Federal High Court of Lagos in Nigeria issued a ruling in Petitioner's favor recognizing and enforcing the Award and Addendum in Nigeria and requiring Respondent to pay Petitioner USD 12,200,000. Munoz Decl. ¶ 5. Respondent lodged an appeal against that decision, and the Nigeria Court of Appeal's decision is pending. *Id.*

## ARGUMENT

16. "[C]onfirmation under the [New York] Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Chelsea Football Club Ltd. v. Mutu*, 849 F.Supp.2d 1341, 1344 (S.D. Fla. 2012) (internal quotation marks omitted). Judicial review of an arbitral award is thus "among the narrowest known to the law." *Bamberger Rosenheim, Ltd., (Israel) v. OA Dev., Inc., (United States)*, 862 F.3d 1284, 1287 (11th Cir. 2017) (internal quotation marks omitted).

17. "[I]t is well-accepted that the Convention manifests a general pro-enforcement bias." *Hispasat, S.A. v. Bantel Telecom, LLC*, CASE NO. 17-20534-CV-WILLIAMS/TORRES, 2017 WL 8896241, at *3 (S.D. Fla. Aug. 2, 2017). Accordingly, awards under the Convention are "presumptively entitled to deference and enforcement." *Jankula v. Carnival Corp.*, Case No. 18-CV-24670-UNGARO/MCALILEY, 2019 WL 8060595, at *7 (S.D. Fla. July 8, 2019) (internal quotation marks omitted).

---

[2] Ruling 12319 pertained to the interim award on jurisdiction and the Award and Ruling 12324 pertained to the Addendum.

7

18. This Petition should be granted because, as demonstrated below, (1) all statutory conditions for recognition and enforcement are satisfied; and (2) none of the limited grounds for refusal to confirm exist.

### A. Petitioner Has Satisfied All of the Statutory Conditions for Recognition and Enforcement of the Award

19. This Petition falls within the confirmation and enforcement regime of the Convention and satisfies the statutory requirements for confirmation and enforcement.

20. Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq.*, authorizes federal courts to enforce foreign arbitral awards that are governed by the Convention. The Award falls under the Convention because, separately, the parties are both foreign, the Arbitration concerned events in Nigeria, the dispute was governed primarily by Panamanian law (*see* Award ¶ 494), and the Award was made in France. *See* New York Convention Art. 1(1) (Convention applies to the "recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought" and "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought"); 9 U.S.C. § 202 (award considered non-domestic if it arises out of a legal relationship that is "not entirely between citizens of the United States" or that "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states").

21. Articles II and IV of the Convention require that a petition for enforcement be accompanied by duly certified copies of the award and the parties' written agreement to arbitrate. Duly certified copies of the Award and Addendum are appended to the Munoz Declaration as Exhibits A and B, respectively; a true and correct copy of the Consortium Agreement, Article 17 of which contains the parties' written agreement to arbitrate, is appended to the Munoz Declaration

8

as Exhibit C. Accordingly, these Convention requirements for recognition and enforcement are satisfied.

22. Finally, the petition is brought within the three-year statute of limitations provided for by 9 U.S.C. § 207. *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."). The Award was rendered on March 24, 2021, and the Petition is therefore within this period, given that March 24, 2024, was a Sunday. *See* Fed. R. Civ. P. 6(a)(1)(C); *Ameriprise Bank, FSB v. PNC Bank, Nat'l Ass'n*, Civil Action No. 12-1113, 2012 WL 5906400, at *7 n.8 (W.D. Pa. Nov. 26, 2012).

B. **None of the Limited Grounds to Refuse Recognition and Enforcement Exist**

23. The FAA mandates that a court "*shall* confirm the award" unless one of the grounds for refusal specified in the Convention applies. 9 U.S.C. § 207 (emphasis added). Thus, the Convention's "enumeration of defenses against enforcement is exclusive" and an award subject to the Convention "must be confirmed unless [the respondent] can successfully assert one of the seven defenses against enforcement of the award enumerated in Article V of the . . . Convention." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1441 & n.8 (11th Cir. 1998), *overruled on other grounds by Corporación AIC, SA v. Hidroeléctrica Santa Rita, S.A.*, 66 F.4th 876 (11th Cir. 2023); *see also, e.g.*, *Bamberger Rosenheim*, 862 F.3d at 1287 (same).

24. The party opposing recognition and enforcement "bear[s] the burden of proving that any of these seven defenses is applicable." *Industrial Risk*, 141 F.3d at 1442. This "burden is onerous because of the strong public policy in favor of international arbitration." *IMAX Corp. v. Giencourt Investments, S.A.*, CASE NO. 17-62033-CIV-COOKE/MCALILEY, 2019 WL 8160700, at *6 (S.D. Fla. Sept. 27, 2019) (internal quotation marks omitted); *see also, e.g.*,

9

*Hispasat*, 2017 WL 8896241, at *3 ("[T]he party opposing confirmation bears the heavy burden of proving the applicability of the Convention's enumerated defenses.").

25.  None of the grounds for refusing enforcement of an award set forth in Article V(1) of the Convention applies here. Nor does either of the grounds set forth in Article V(2) of the Convention apply.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully petitions this Court pursuant to the New York Convention and Chapter 2 of the FAA, to:

a.  enter an order recognizing and enforcing the Award against Respondent;

b.  enter judgment on the Award against Respondent and in favor of Petitioner;

c.  enter judgment that Respondent is liable to Petitioner for post-judgment interest at the applicable statutory rate;

d.  enter an order requiring Respondent to pay the costs incurred by Petitioner in connection with this proceeding; and

e.  award such further relief as may be just and proper.

Dated: March 25, 2024

Respectfully submitted,

**COFFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, Penthouse One
Miami, FL 33133
Telephone: (305) 858-2900
Facsimile:  (305) 858-5261

By:  /s/ Scott A. Hiaasen
    Scott A. Hiaasen
    Florida Bar No. 103318
    shiaasen@coffeyburlington.com
    lperez@coffeyburlington.com
    service@coffeyburlington.com

and

**CHAFFETZ LINDSEY LLP**
(*Motion for Admission pro hac vice forthcoming*)

By:   /s/ Yasmine Lahlou
    Yasmine Lahlou
    1700 Broadway, 33rd Floor
    New York, NY 10019
    Tel. (212) 257-6960
    Fax. (212) 257-6950
    y.lahlou@chaffetzlindsey.com

*Attorneys for Petitioner
Société Nationale d'Opérations
Pétrolières de la Côte d'Ivoire*